# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### Western Division (at Cincinnati)

| | |
|---|---|
| **DAN HILS, et. al.** | : |
| Plaintiffs | : |
| v. | : |
| **GABRIEL DAVIS, et. al.** | : |
| Defendants | : |

## PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION WITH VERIFIED COMPLAINT IN SUPPORT

Plaintiff, by and through Counsel, moves this Court for an Order granting him a

preliminary injunction. A memorandum in support is attached hereto and incorporated by

reference, as is a proposed order.

Respectfully Submitted,

/s/Zachary Gottesman
Zachary Gottesman (0058675)
Gottesman & Associates, LLC
404 East 12th Street, First Floor
Cincinnati, Ohio 45202
513/651-2121
zg@zgottesmanlaw.com

/s/ Christopher Wiest_____
Christopher Wiest (OH 0077931)
Chris Wiest, Atty at Law, PLLC
25 Town Center Blvd, Suite 104
Crestview Hills, KY 41017
513/257-1895 (c)
chris@cwiestlaw.com

## CERTIFICATION UNDER FRCP 65(b)(1)

As required by FRCP 65(b)(1), the facts contained in the verified complaint, and this

Motion and accompanying memorandum, clearly show that immediate and irreparable injury,

loss, or damage will result to the movant before the adverse party can be heard in opposition.

Further, on July 15, 2021, at approximately 4:30 p.m., the undersigned sent an electronic mail to the Defendants' Counsel, the City of Cincinnati Solicitor, and informed him of the pendency of this filing and the claims, and, upon finalization and filing, sent him a copy of the Complaint and Restraining Order motion and memorandum by electronic mail. Even so, irreparable harm is ongoing from the complained of practices as contained in the verified complaint and this motion and memorandum, and so notice should not be required. I certify that the above is true, in accordance with FRCP 65(b).

/s/Zachary Gottesman
Zachary Gottesman (0058675)

## MEMORANDUM IN SUPPORT

### I. FACTS

Plaintiff, Dan Hils, is and at all times relevant hereto has been a resident of the State of Ohio and Hamilton County, Ohio, and has been duly employed by the City of Cincinnati as a police sergeant. (Pl.'s Ver. Compl., ¶2). He is also the elected President of FOP Lodge 69, and, in that capacity, systemically and routinely represents officers in interactions with the City, including without limitation, all of the matters contained herein. *Id.*

Plaintiff Charles Knapp, is and at all times relevant hereto has been a resident of the State of Ohio and City of Cincinnati, and has been duly employed by the City of Cincinnati as a police officer, and is assigned to the Crime Gun Intelligence Unit. *Id.* at ¶3. He was recently the subject of a citizen complaint before the City of Cincinnati Citizen Complaint Authority ("CCA"). *Id.*

4.      Plaintiff Ken Byrne, is and at all times relevant hereto has been a resident of the State of Ohio and City of Cincinnati, and has been duly employed by the City of Cincinnati as a

police officer, and is assigned to District 5, third shift. *Id.* at ¶4. He was recently the subject of a citizen complaint before the City of Cincinnati Citizen Complaint Authority ("CCA").

5.     Plaintiff Adarryl Burch, is and at all times relevant hereto has been a resident of the State of Ohio and City of Cincinnati, and has been duly employed by the City of Cincinnati as a police officer, and is assigned to District 5, third shift. *Id.* at ¶5. He was recently the subject of a citizen complaint before the City of Cincinnati Citizen Complaint Authority ("CCA").

Defendant, the City of Cincinnati, is a duly chartered municipality and city, within the State of Ohio, and, in that capacity, maintains a police department. *Id.* at ¶6. Defendant Ikechukwu Ekeke is an investigator with the CCA. *Id.* at ¶7. Defendant Gabriel Davis is the Director of the City of Cincinnati CCA. *Id.* at ¶8.

Under Article XXVII of the City of Cincinnati Municipal Code, Section 1, the CCA's mission "will be to investigate serious interventions by police officers, including but not limited to shots fired, deaths in custody and major uses of force, and to review and resolve all citizen complaints in a fair and efficient manner." *Id.* at ¶11. Under Section 2 of that Article, "[a]s a condition of employment, all police officers and city employees are required to provide truthful and accurate information to the CCA." *Id.* Under Section 3-B of that Article, "[p]olice officers and other city employees will be required to submit to administrative questions consistent with existing constitutional and statutory law." Section 3-F of the Article provides that files for retention "shall include tape-recorded interviews of officers, complainants and witnesses." *Id.*

The CCA, originally intended to create transparency and accountability, has instead, through its operations, had an adverse effect on policing and safety of the community. *Id.* at ¶12. Its non-professional, untrained, layperson second guessing has resulted in reactive-only policing,

increasing the City's murder rate to record high levels, as well other personal and property crimes to astonishing levels. *Id.*

Events over the past few weeks

Starting a few weeks ago, Plaintiff Hils had occasion to deal with an interview conducted by Defendant Ekeke, where, even though the typical policy should be to record the entirety of an officers' interview with the CCA, Ekeke utilized a selective recording technique, whereby he turned off the CCA recording device at various times, creating a deceptive and inaccurate record of the matter, including, without limitation, omitting material exculpatory statements made by the officer. *Id.* at ¶13.

In addition, a few days ago, Defendant Ekeke intimidated and threatened another officer prior to the interview and recording of the interview, to attempt to obtain misleading statements by the officer, all creating a deceptive and inaccurate record of the matter. *Id.* at ¶14.

As a consequence, over the last few days, Plaintiff Hils began to take precautionary measures in interviews with the CCA, namely to record the entirety of the interview themselves, from the time the officer appeared. *Id.* at ¶15. Plaintiff Hils has recorded, and intends to record in the future, interviews with the CCA based on a desire for complete and open transparency concerning policing in the City of Cincinnati – a desire to record, for posterity, possibly defensively, and possibly for release to conventional and non-conventional media. *Id.*

When Plaintiff Hils has attempted to record the interviews, Defendants Ekeke and Davis, or investigators acting on the directives of Defendant Davis, have terminated the interviews, and, in turn, threatened the officers involved with disciplinary and other measures for recording the interviews. *Id.* at ¶16. Defendants Davis, Ekeke, and other investigators have threatened officers the subject of investigations that are attempted to be recorded by Plaintiff Hils.

On July 14, 2021, the CCA conducted an interview with Plaintiff Charles Knapp, with Plaintiff Hils representing him. *Id.* at ¶17. When Hils began recording that interview, the investigator informed Knapp that they would not conduct the interview with Hils recording, suggested Knapp find another representative who would not record the interview suggested negative consequences would flow to Knapp if the interview was recorded, and, when Knapp refused, terminated the interview. *Id.* Knapp refused to be interviewed unless the interview was recorded. *Id.*

Defendants Davis and Ekeke, in turn, created a policy July 15, 2021, regarding recording by officers or their representatives at CCA matters, to threaten and retaliate against officers who had Plaintiff Hils represent them in CCA matters because of his insistence on recording interviews with the CCA to prevent or at least preserve the existence of either deceptive and/or threatening tactics directed towards officers. *Id.* at ¶18. A true and accurate copy of that policy is Exhibit A to Plaintiffs' Complaint. *Id.*

On July 15, 2021, the CCA conducted two interviews, one with Plaintiff Ken Byrne and the second with Adarryl Burch, with Plaintiff Hils representing each of them. *Id.* at ¶18. When Hils began recording each of those interviews, the investigator followed the script contained in Exhibit A, and enforced that policy against Hils, Burch and Byrne, including the threats contained in the Exhibit A policy. *Id.*

Defendants Davis and Ekeke have been, and continue to enforce their retaliatory, vindictive, and unconstitutional no-recording policy for the past week against these complaining Plaintiffs, and have indicated that they will continue to do so in the future. *Id.* at ¶20.

The foregoing no recording policy constitutes an official municipal policy of the Defendant City of Cincinnati, an unofficial custom of the Defendant City of Cincinnati, or

because the municipality was deliberately indifferent in a failure to train or supervise the other Defendants. *Id.* at ¶21.

## II. LAW AND ARGUMENT

When deciding whether to issue a temporary restraining order or preliminary injunction, the court must consider the following four factors: (1) Whether the movant has demonstrated a strong likelihood of success on the merits; (2) Whether the movant would suffer irreparable harm; (3) Whether issuance would cause substantial harm to others; and (4) Whether the public interest would be served by issuance. *Suster v. Marshall*, 149 F.3d 523, 528 (6th Cir. 1998); Northeast Ohio Coalition for the *Homeless v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006).

These "are factors to be balanced, not prerequisites that must be met." *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985).

However, Sixth Circuit precedent establishes that the remaining factors are met where constitutional rights are infringed upon and a government actor is the Defendant. *H.D.V. Greektown, LLC v. City of Detroit*, 568 F.3d 609 (6th Cir. 2009) (abuse of discretion not to grant preliminary injunction where constitutional violation found); *Roberts v. Neace*, 958 F.3d 409 (6th Cir. 2020); *Maryville Baptist Church, Inc. v. Beshear*, 957 F.3d 610 (6th Cir. 2020); *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (irreparable harm from violation of rights); *G & V Lounge v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1999) ("[I]t is always in the public interest to prevent the violation of a party's constitutional rights.").

### A. **Plaintiffs have established a likelihood of success on the merits – namely, a violation of their rights and thus entitlement to an injunction**

1. Defendants' conduct and policies violates the First Amendment

Freedom of the press, as protected under the First Amendment, "goes beyond protection of the press and the self-expression of individuals to prohibit government from limiting the stock

of information from which members of the public may draw." *First Nat'l Bank v. Bellotti*, 435

U.S. 765, 783 (1978). The Amendment extends to "news gathering." *Branzburg v. Hayes*, 408

U.S. 665, 681 (1972). This, in turn, ensures and enhances, to the maximum extent possible, "free

discussion of governmental affairs." *Mills v. Alabama*, 384 U.S. 214, 218 (1966).

The First Amendment protects not just the right of the press to gather news — it affords

that right to the general public as well. *Branzburg, supra*, 408 U.S. at 684 ("It has generally been

held that the First Amendment does not guarantee the press a constitutional right of special

access to information not available to the public generally.").

"As the Supreme Court has observed, 'the First Amendment goes beyond protection of

the press and the self-expression of individuals to prohibit government from limiting the stock of

information from which members of the public may draw.'" *Glik v. Cunniffe*, 655 F.3d 78, 82

(1st Cir. 2011).

"An important corollary to this interest in protecting the stock of public information is

that [t]here is an undoubted right to gather news "from any source by means within the law."' *Id.*

(alteration in original) (*quoting Houchins v. KQED, Inc.*, 438 U.S. 1, 11 (1978)).

The Ninth and Eleventh Circuits recognize a right to record any matters of public interest.

*Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000) (finding "a right to record

matters of public interest"); *Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995) (finding

a "right to film matters of public interest").

Four other circuits recognize a narrower right to record a subset of government officials:

law enforcement officers – which is what this matter also involves. *See Chestnut v. Wallace*, 947

F.3d 1085, 1090 (8th Cir. 2020) (implying a recognized right to record police activity); *Fields v.

City of Philadelphia*, 862 F.3d 353, 359 (3d Cir. 2017) (finding a right to record "police

7

activity"); *Turner v. Driver*, 848 F.3d 678, 690 (5th Cir. 2017) (finding a "right to record the police"); *ACLU of Ill. v. Alvarez*, 679 F.3d 583, 600 (7th Cir. 2012) (implying a right to record the police).

Recognizing that the First Amendment protects the right to record government officials performing their duties enables "a foremost purpose of the Constitution's guarantee of speech": "to enable every citizen at any time to bring the government and any person in authority to the bar of public opinion by any just criticism upon their conduct in the exercise of the authority which the people have conferred upon them." *Alvarez*, 679 F.3d at 600 (quoting Thomas M. Cooley, A Treatise on the Constitutional Limitations 421-22 (1868)). *See, also, Dyer v. Smith*, 2021 U.S. Dist. LEXIS 34090 (EDVA 2021).

It is notable that Defendants themselves recognize the value in recording these interviews, at least when it comes to potentially holding the officers accountable – and unfortunate that these Defendants have actively resisted recording by the officers to hold the CCA staff accountable. As Justice Brandeis observed, however, sunlight is the best disinfectant. *Buckley v. Valeo*, 424 U.S. 1, 67 (1976) (*quoting* L. Brandeis, Other People's Money 62 (Nat'l Home Library Found. ed. 1933) ("Publicity is justly commended as a remedy for social and industrial diseases. Sunlight is said to be the best of disinfectants; electric light the most efficient policeman.")).

Defendants' non-recording policies violate the First Amendment.

2. <u>Defendants' conduct and policies also constitutes First Amendment rights retaliation that should be enjoined</u>

The elements to a retaliation claim are that: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between

elements one and two, that is, the adverse action was motivated at least in part by the plaintiff's protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999).

All of these elements are met here. Defendants have taken action against the Plaintiffs, namely (i) termination of in process CCA interviews, with a threat to complete an investigation concerning and against the officer without hearing the officers' side of the story; and (ii) a threat concerning recording of CCA interviews being deemed an "obstruction" of an investigation, which can lead to disciplinary action up to and including termination of employment. (Pl.'s Ver. Compl., ¶27).

## B. The remaining injunction factors are also met

As the Sixth Circuit held just a few weeks ago in *Vitolo v. Guzman*, 999 F.3d 353, 2021 U.S. App. LEXIS 16101 (6th Cir. 2021), "[i]n constitutional cases, the first factor is typically dispositive." "That's because '[w]hen constitutional rights are threatened or impaired, irreparable injury is presumed.'" *Id., citing Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012). "And no cognizable harm results from stopping unconstitutional conduct, so 'it is always in the public interest to prevent violation of a party's constitutional rights.'" *Id., citing Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cnty.*, 274 F.3d 377, 400 (6th Cir. 2001).

## III. CONCLUSION

Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction should be granted. A proposed order is attached.

Respectfully submitted,

/s/Zachary Gottesman
Zachary Gottesman (0058675)
Gottesman & Associates, LLC
404 East 12th Street, First Floor
Cincinnati, Ohio 45202
513/651-2121

zg@zgottesmanlaw.com

/s/ Christopher Wiest_____
Christopher Wiest (OH 0077931)
Chris Wiest, Atty at Law, PLLC
25 Town Center Blvd, Suite 104
Crestview Hills, KY 41017
513/257-1895 (c)
chris@cwiestlaw.com
*Attorneys for Plaintiffs*

CERTIFICATE OF SERVICE

I certify that I have served a copy of the foregoing with the summons in this matter by certified

mail, return receipt requested (with an ordinary mail waiver) this 16th day of July, 2021, and have

further served a copy of the foregoing by electronic mail to the office of the City Solicitor, this

15th day of July, 2021.

/s/Zachary Gottesman
Zachary Gottesman (0058675)