**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **DAN HILS, et al.** | : | **Case No.  1:21cv475** |
| | : | |
| **Plaintiffs,** | : | **Judge Barrett** |
| | : | |
| **v.** | : | |
| | : | |
| **GABRIEL DAVIS, et al.** | : | **MEMORANDUM IN OPPOSITION** |
| | : | **TO PLAINTIFFS' MOTION FOR** |
| | | **TEMPORARY RESTRAINING** |
| | : | **ORDER AND PRELIMINARY** |
| | | **INJUNCTION** |
| **Defendants.** | : | |

Plaintiffs' Complaint and Motion for a Temporary Restraining Order is a misguided attempt to shoehorn a labor dispute into a federal case. More troubling is the substance of their argument: essentially, the public has a right to be present and to record public officials engaged in their official duties no matter *where* the public official is located. This dramatic expansion of First Amendment jurisprudence is as unsupported as it is foolhardy. It would eviscerate the government's ability to place reasonable time, place, and manner restrictions on recordings by members of the public at large. It would also eliminate the government's right, as an employer, to reasonably limiting the speech of its employees pursuant to their official duties.

The logical consequence of Plaintiffs' arguments is an unqualified right to record in any setting in which a public official is carrying out a public duty—whether that be a police officer interrogating a suspect at the police district; a sensitive personnel discussion among public employer management within a private office; or

an investigatory interview conducted by an administrative agency such as the Cincinnati Citizen Complaint Authority in a private conference room.

Thankfully, the Court need not accept the premise of Plaintiffs' arguments because there is no binding precedent that dictates such a disruptive result. Rather, as simple logic indicates, their arguments are misguided and should be rejected.

## I.    Background

The Citizen Complaint Authority (CCA) was created and codified as a result of the historic Collaborative Agreement regarding police practices in Cincinnati. *In re Cincinnati Policing*, S.D.Ohio No. C-1-99-317. The purpose behind the CCA is to foster more trust and cooperation between the police and the public by conducting independent, civilian investigations into police conduct, including uses of force. *State v. Cincinnati Citizen Complaint Authority*, 139 N.E.3d 947, 2019-Ohio-5349 (1st Dist.), ¶ 1. Because the CCA conducts administrative investigations into whether City employees followed City policies and practices, providing truthful and accurate information to the CCA is a condition of the City employees' employment. Cincinnati Administrative Code, Article XXVIII, Section 2-B.[1] Consistent with their rights under the collective bargaining agreement, officers may have a representative from their union present during the interview conducted by the CCA investigator. *See* CAC, Art. XVIII Sec. 3-B. These interviews are conducted inside the offices of the CCA, and they

---

[1] The Cincinnati Administrative Code is available online at https://library.municode.com/oh/cincinnati/codes/code_of_ordinances?nodeId=THADCO_ARTXXVIII CICOAU_S1PU.

are not open to the public. The interviews are essentially a civilian equivalent of interviews conducted by the CPD Internal Investigations Section.

The present dispute involves Plaintiffs Knapp, Byrne, and Burch, all of whom were interviewed by a CCA investigator. Complaint, ¶¶ 3-5. Plaintiff Hils, who is the current president of the Fraternal Order of Police, Lodge #69 ("FOP"), was present to represent those officers during the interviews in his capacity as a union representative. Id. ¶ 2. Importantly, all Plaintiffs were present in this private City office because of their roles as City employees. None were present as members of the public at large, nor as a member of the press. Plaintiffs maintain that they have a right to record the interviews. There is a factual dispute over whether the interviews were recorded in their entirety by the CCA.

## II.     Standard of Review

In order for Plaintiffs to prevail in receiving a temporary restraining prohibiting the City from preventing or limiting the recording of CCA interviews, Plaintiffs must prove four things: (1) the moving party has a strong or substantial likelihood of success on the merits; (2) the moving party will suffer irreparable harm unless injunctive relief is granted; (3) the requested relief will cause substantial harm to third parties; and (4) injunctive relief is in the public interest. *Ne. Ohio Coal. for Homeless & Service Emps. Int'l Union v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006).  As this Court has explained, the "[p]laintiff bears the heavy burden of demonstrating his entitlement to a TRO." *ABX Air, Inc. v. Int'l Brotherhood of Teamsters, Airline Div.*, 2016 U.S. Dist. LEXIS 169221 (S.D. Ohio Dec. 7, 2016).

Further, an "injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Cnty. Gov't,* 305 F.3d 566, 573 (6th Cir. 2002) (*citing Lear v. Daeschner*, 288 F.3d 729, 739 (6th Cir. 2000)). "Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000).

## III.    Argument

This Court should deny Plaintiffs' motion for a TRO because at most their allegations allege a labor dispute, not a federally cognizable action. First, and most importantly, Plaintiffs cannot demonstrate by clear and convincing evidence a substantial likelihood of success on the merits because there is no First Amendment right to record the interviews of the CCA. More than that, Plaintiffs claims are properly a labor dispute over which the Ohio State Employment Relations Board ("SERB") has exclusive jurisdiction—a fact demonstrated by Plaintiff Hils' signature on the unfair labor practice charge filed by the FOP about these underlying facts.[2] Further, because Plaintiffs are unable to establish a Constitutional violation or likelihood of success on the merits, the remaining factors in the preliminary injunction analysis weigh against the granting of the motion.

### A. A public employee's desire to record work-related events does not implicate the First Amendment

---

[2] Exhibit A is a copy of the Unfair Labor Practice Charge filed by the Fraternal Order of Police (FOP), Lodge #69, signed by Plaintiff Dan Hils, President of FOP Lodge #69. The Court may take judicial notice of this public record. *See, e.g. Kostrezwa v. City of Troy*, 247 F.3d 633, 644 (6th Cir. 2001).

There is not a substantial likelihood that Plaintiffs will prevail on the merits of this case. Plaintiffs bring two underlying causes of action via 42 U.S.C. § 1983: (1) an alleged violation of the First Amendment right to record and (2) a claim of First Amendment retaliation. A *prima facie* case of First Amendment retaliation under 42 U.S.C. § 1983 requires a plaintiff to demonstrate that (1) they are engaged in constitutionally protected activity, (2) defendants' adverse action caused them to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in the activity, and (3) the adverse action was motivated, at least in part, as a response to the exercise of their constitutional rights. *Farhat v. Jopke,* 370 F.3d 580, 588 (6th Cir. 2004). Therefore, to succeed on either claim, Plaintiffs must establish that there is a constitutional right to record CCA interviews. They cannot meet this burden as there is no general First Amendment right to record governmental meetings; the right of access to gather news is limited; the CCA policy is viewpoint neutral and reasonable; and the CCA policy represents a reasonable restriction by a public employer on the conduct of its employees.

### 1. Plaintiffs are not engaged in constitutionally protected activity as they do not have an established a right to record CCA interviews.

Plaintiffs are not engaged in constitutionally protected activity as they do not have a constitutional right to record CCA interviews. In an attempt to create such a right, they have cited this court to multiple cases about people who have recorded police activity that has occurred ***in public***. *Glik v. Cunniffe*, 655 F.3d 78, 82 (1st Cir. 2011) ("The filming of government officials engaged in their duties **in a public place**, including police officers performing their responsibilities, fits comfortably within

these [First Amendment] principles.") (emphasis added); *Gericke v. Begin*, 753 F.3d 1, 7-8 (1ˢᵗ Cir. 2014) (extending *Gilk* to traffic stops, which also occur **in public**); *Smith v. City of Cumming,* 212 F.3d 1332 (11ᵗʰ Cir. 2000) (there is "a First Amendment right, subject to reasonable time, manner and place restrictions, to photograph or videotape police conduct"); and *Crawford v. Geier*, 131 F.Supp.3d 703, 715 (S.D. Ohio 2015) ("that there is a First Amendment right openly to film police officers carrying out their duties **in public**.").

Defendants do not question that there is a First Amendment right to film the government officials, including police officers, carrying out their duties **in public**, subject to normal time, manner, and place restrictions. Perhaps if the CCA conducted its interviews in the middle of Fountain Square, the cases cited by Plaintiffs would be applicable. But the fatal flaw in Plaintiffs' analysis is that the CCA interviews do **not** occur in public, nor are they open to the public at any time. In such a setting, there is no constitutional right to record. As caselaw demonstrates, there is a practical and constitutional world of difference between what takes place on a public street and what takes place in an interview room.

Even in settings where there is an unquestionable right for the public to attend (which is not this case), courts have rejected a right to record. In *Whiteland Woods, L.P. v. Township of West Whiteland*, the plaintiff, a real estate developer, asserted that its First and Fourteenth Amendment rights were violated by the defendant township's refusal to allow the plaintiff to videotape a meeting of the township planning commission. 193 F.3d 177, 178 (3rd Cir. 1998). The *Whiteland Woods* court

found [the plaintiff] had a constitutional right of access to the Planning Commission meeting" but noted that "the public's right of access is not absolute" and that "the First Amendment does not require unfettered access to government information." *Id.* at 181-182. Finding that the plaintiff "had failed to demonstrate an essential nexus between the right of access and a right to videotape the Planning Commission proceedings," the court concluded that its "right of access to Planning Commission meetings did not create a federal constitutional right to videotape the meetings." *Id.* at 183-184.

The Northern District of Ohio relied upon *Whiteland Woods* in *Maple Heights News v. Lanksy,* where it found that First Amendment rights were not violated when government officials removed the plaintiffs' video camera from a council meeting. No. 1:15CV53, 2017 U.S. Dist. LEXIS 34639 (N.D. Ohio 2017). Analyzing the matter under First Amendment right-of-access principles, the court explained that the plaintiffs "failed to demonstrate any deprivation of their First Amendment rights, by virtue of [the commissioner's] removal of their video camera from the Maple Heights City Council Meeting." Other courts have reached the same conclusion. *Rice v. Kempker*, 374 F.3d 675, 677-78 (8th Cir. 2004) (Media policy that prohibited cameras or tape-recording devices of any kind in the witness area of execution room did not infringe on liberties protected by First Amendment); *Johnson v. Adams*, 629 F.Supp. 1563, 1564 (E.D. Tex. 1986) (holding as matter of law that First Amendment did not require that videotaping of commissioners' court sessions be allowed).

Here, the public has no right to attend the CCA interviews. Plaintiffs are present as a result of the conditions of their employment and the exercise of their collective bargaining rights. Because their presence is specifically restricted to their public employment, and not a right of the public to be present, Plaintiffs do not have a First Amendment right to record CCA interviews, and the rest of their arguments fail.

## 2. Plaintiffs' presence at CCA interviews is required by their employment, not because of a right to gather news

Plaintiffs suggest that they have a constitutionally protected right of access to gather news. Of course, "[t]he constitutional guarantee of a free press 'assures the maintenance of our political system and an open society,' and secures 'the paramount public interest in a free flow of information to the people concerning public officials.'" *Pell v. Procunier*, 417 U.S. 817, 832, 94 S. Ct. 2800, 41 L. Ed. 2d 495 (1974) (citation omitted). The Supreme Court has also, however, recognized that the First Amendment right of access to information is qualified and subject to limitations: "The right to speak and publish does not carry with it the unrestrained right to gather information." *Zemel v. Rusk,* 381 U.S. 1, 17, 85 S.Ct. 1271, 14 L.Ed.2d 179 (1965). As such, "[i]t has generally been held that the First Amendment does not guarantee the press a constitutional right of special access to information not available to the public generally." *Branzburg v. Hayes,* 408 U.S. 665, 684, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972).

"The Constitution is neither a Freedom of Information Act nor an Official Secrets Act," and "[n]either the First Amendment nor the Fourteenth Amendment mandates a right of access to government information or sources of information

within the government's control." *Houchins v. KQED, Inc.*, 438 U.S. 1, 14-15, 98 S.Ct. 2588, 57 L.Ed.2d 553 (1978). "The right of access to government information 'is not a tool for judges to pry open the doors of state and federal agencies because they believe that public access to this type of information would be a good idea. It is a qualified right to certain "proceedings and documents filed therein" and nothing more.'" *Phillips v. DeWine*, 841 F.3d 405, 419 (6th Cir. 2016) *quoting Wood v. Ryan*, 759 F.3d 1076 (9th Cir. 2014, Bybee, J., dissenting).

As recognized by the Sixth Circuit, this line of jurisprudence has led to an experience-and-logic test:

> First, the proceeding must be one for which there has been a "tradition of accessibility." This inquiry requires a court to determine "whether the place and process [to which access is sought] has historically been open to the press and general public." Second, public access must play a "significant positive role in the functioning of the particular process in question." Moreover, even if these elements are satisfied, the right of access is a qualified one and must be outweighed by a strong countervailing interest in maintaining the confidentiality of the proceedings. *Cincinnati Gas & Elec. Co. v. General Elec. Co.,* 854 F.2d 900 (6th Cir. 1988) quoting *Press-Enterprise v. Superior Court,* 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986).

In using that test, the Sixth Circuit has repeatedly found that there was no right of the press to gather information. In *Cincinnati Gas & Elec. Co.*, it found that there was no right to access summary jury trials, which are mock trials aimed at reaching settlement, because there is no tradition of accessibility to settlement discussions and public access would have significant adverse effects on using summary jury trials as a settlement device. *Id.* at 904. In *Indianapolis Star v. United States*, the Sixth Circuit used that test to determine that the press is not guaranteed

access to search warrants. 692 F.3d 424 (6th Cir. 2012). In *United States v. Miami Univ.*, it applied those same principles in finding that the press would not be given access to student disciplinary hearings. 394 F.3d 797 (6th Cir. 2002). And in *Cyphert v. Scotts Miracle-Gro Co.,* it used that test to find there was no right of access to presentence reports, as well as no right of access to objections to those reports. 831 F.3d 765 (6th Cir. 2016).

As the Sixth Circuit stated in *Indianapolis Star*, "the importance of the confidentiality necessary for criminal investigations is well recognized." 692 F.3d at 432 (citations omitted). There, the court was dealing with search warrants. Here, we are dealing with an internal investigation of employee conduct. While this may be an investigation into alleged police misconduct, which is unquestionably an issue of public importance, even that does not create a First Amendment right of access. *See Paine v. City of Chicago*, No. 06 C 3171, 2006 U.S. Dist. LEXIS 78182, *14-21 (N.D Ill. 2006).

Plaintiffs have not established that there is a First Amendment right to gather news in CCA hearings. If such a right were to exist, it would exist only under Ohio law under either its Open Meetings Act or Public Records law. Notably and rightfully so, Plaintiffs have not suggested any violation of either.

### 3. The CCA policy is viewpoint neutral and reasonable

Even if Plaintiffs could have shown that there was a limited right of access to CCA hearings, it would not change the fact that the CCA can prohibit third-party

recordings and, further, that the policy it currently has is viewpoint neutral and reasonable.

Just last year, in *Enoch v. Hamilton Cty. Sheriff's Office*, the Sixth Circuit considered whether sheriff deputies violated a person's First Amendment rights by arresting them in a courthouse hallway for violating a local court rule related to video recording in the courthouse. 818 Fed.Appx. 398 (6th Cir. 2020). The rule in question prohibited "recording 'in any courtroom or hearing room, jury room, judge's chambers or ancillary area (to be determined in the sole discretion of the Court) without the express permission of the Court." *Id*. at 400 quoting Hamilton Cty. Common Pleas Court R. 33(D)(6).

Noting that the courthouse hallways amounted to a limited public forum, the court found that "the government is not required to and does not allow persons to engage in every type of speech" and "may restrict speech so long as the restrictions are viewpoint neutral and 'reasonable in light of the purpose to be served by the forum.'" *Id.* quoting *Hartman v. Thompson*, 931 F.3d 471, 479 (6th Cir. 2019) and *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106, 121 S.Ct. 2093, 150 L.Ed.2d 151 (2001) (internal quotations omitted). Finding that "[n]o one denies that Rule 33(D)(6) is a reasonable restriction on speech," the Sixth Circuit concluded that the plaintiffs' rights were not violated. *Id.* at 405.

Here, the CCA policy on not allowing recordings is viewpoint neutral and reasonable in light of the purpose to be served by the forum. It applies to all persons and their representatives. It serves a governmental interest in maintaining order

during its proceedings. It ensures that what is discussed during the interview is not improperly broadcast and, in turn, improperly used to influence the testimony of others appearing before the CCA. And by creating its own recording that it both preserves and ultimately provides to the officer, it leaves open adequate alternative channels for communication. *Maple Heights News, supra,* 2017 U.S. Dist. LEXIS 34639 at *7-8; *Whiteland, supra,* 193 F.3d at 183.

Plaintiffs, relying on the document attached to their Complaint, may argue that the policy is not neutral because it specifically refers to one of them, Dan Hils, by name. Plaintiffs' exhibit, however, is a script created for specific interviews at which Sgt. Hils was present. It refers to Hils because he is the person who has been routinely making third-party recordings and who has refused to stop making those recordings. While the script may refer to Hils, the policy applies to all persons being interviewed and their representatives.

The CCA has the right to control its proceedings and that right includes prohibiting third-party recordings. Plaintiffs have not and cannot demonstrate otherwise. They cannot, therefore, show that they were engaged in a constitutionally protected activity and, in turn, cannot demonstrate any likelihood of success on the merits. Yet even if they had, they still would not have proven a likelihood of success on the merits because of the limitations placed on employee-speech.

### 4. A public employee's First Amendment rights at work are limited

Even if the general public enjoyed a First Amendment right to record CCA interviews, Plaintiffs have not shown that it is improper to limit their First

Amendment rights as a term of their employment. "When a citizen enters government service, the citizen by necessity must accept certain limitations on her or her freedom." *Garcetti v. Ceballos,* 547 U.S. 410, 418 (2006). While a public employee does not shed their First Amendment rights merely because of their government employment, the First Amendment's protection is not as robust as it is in other contexts. In particular, public employee speech receives First Amendment protection only when the employee "speak[s] as a citizen addressing mattes of public concern." *Id.* at 417 *citing Pickering v. Bd. of Educ. Of Twp. High Sch. Dist. 205, Will Cty.,* 391 U.S. 563, 568 (1968). In adopting this limitation, the Court sought to accommodate the inherent tension between affording public employees adequate First Amendment protection without constitutionalizing every employee grievance. *Id.* at 420.

Evaluation of this balance is done via a three-step inquiry. The first question is whether the speech at issue was made pursuant to the employee's official duties. *Garceti*, 547 U.S. at 417. Speech "pursuant to the employee's official duties" or "employee-speech" is unprotected. *Id.* at 413. For speech outside that realm, where an employee is speaking as a citizen, or "citizen-speech," the second step asks whether the speech touches on a matter of public concern. *Id.* If Plaintiffs' speech here was either (1) employee-speech or (2) citizen-speech that did not involve a matter of public concern, then their First Amendment claim fails as a matter of law. If, however, they satisfy the first two inquiries, then the third step requires a balancing of Plaintiffs' First Amendment rights with the City's need to promote "the efficiency of the public

services it performs through its employees." *Id.* at 417 (quotation and citation omitted).

While *Garcetti* is instructive, it is not the last work the Supreme Court has issued on the employee-speech/citizen-speech distinction. In *Lane v. Franks*, the Court modified *Garcetti's* "official duties" language by adding the term "ordinary." 573 U.S. 228, 240 (2014). So, under *Lane*, to take advantage of the "official duties" exception to the First Amendment protection, the public employer must show the speech related to the employee's "ordinary job responsibilities." *Id.* And the Sixth Circuit more recently concluded that the Court's intent in adding the word "ordinary" was to avoid transforming broad swaths of speech by employees into unprotected employee-speech "simply because it concern[ed] . . . the speaker's public employment. *Mayhew v. Town of Smyrna,* 856 F.3d 456, 463 (6th Cir. 2017). "Determining whether an employee speaks as a private citizen or as a public employee can be challenging," but the "inquiry is a practical one." *Id.* at 464 (quotation omitted). This inquiry is a legal question for the court to resolve. *Id.* at 462-646 *quoting Connick v. Myers*, 461 U.S. 138, 148, n.7 (1983); *see also, Fox v. Traverse City Area pub. Sch. Bd. of Educ.*, 605 F.3d 346, 350 (6th Cir. 2010).

The speech at issue here was made by police officers during an investigatory hearing taking place with a CCA investigator which was mandatory as a condition of their employment or required as part of their role as a union representative. Plaintiffs cannot plausibly allege that their speech at issue here was pursuant to their ordinary and official duties. Therefore, they are not entitled to First Amendment protections

for them. At most, they have a dispute related to the terms of their employment, as evidenced by the unfair labor practice charge filed by the FOP.

**B.** **SERB has exclusive jurisdiction over Plaintiffs' claims**

For the reasons articulated above, Plaintiffs' First amendment claims have no merit. However, to the extent Plaintiffs' have properly articulated concerns about the conduct of the City Defendants, these concerns constitute allegations of unfair labor practices that must be resolved by the Ohio State Employment Relations Board ("SERB"). This conclusion is evidenced most forcefully by the fact that Plaintiffs' labor union, the FOP, filed an unfair labor practice charge stemming from the identical facts at issue in this case and the charge was signed by FOP President, Plaintiff Hils.

In creating Chapter 4117 of the Ohio Revised Code, the Ohio legislature established a comprehensive legal framework "for the resolution of public sector labor disputes by creating a series of new rights and setting forth specific procedures and remedies for the vindication of those rights." *Franklin County Law Enforcement Ass'n*, 59 Ohio St. 3d 167, 169 (1991). *Id.* Specifically, R.C. 4117.11 provides that public employees and employers have a right to be free from "unfair labor practices."

Where employees have alleged an unfair labor practices, Chapter 4117 **does not provide for the filing of an original complaint in common pleas court**. *Franklin County Law Enforcement Ass'n*, 59 Ohio St. 3d at 170. Rather, the remedies and procedures outlined in Chapter 4117 are exclusive. *Id. See also, Zafiru v. Cleveland Mun. Sch. Dist.*, 448 Fed. Appx. 531, 546 (6th Cir. 2011) (Finding that

where a complaint is "essentially an allegation of an unfair labor practice," SERB has exclusive jurisdiction and the courts cannot review such claims on primary jurisdiction); *Bero v. Eastern Knox County Joint Fire Dist.*, 2011 U.S. Dist. LEXIS 124570 *8 (S.D. Ohio Oct. 27, 2011) (Finding the federal court did not have jurisdiction over plaintiff's claim of retaliation for union activity because SERB exercises exclusive jurisdiction over claims which meet the state law definition of an unfair labor practice). Therefore, the jurisdictional analysis of Plaintiffs' allegations hinges on whether the claims they assert constitute an unfair labor practice.

Although Plaintiffs' attempt to shroud their allegations in First Amendment terminology, they essentially assert three basic claims. First, City Defendants prevented the Plaintiffs from recording interviews conducted by the CCA. Second, City Defendants threatened or otherwise caused Plaintiffs to remove their designated representative from an interview. Third, City Defendants have retaliated against Plaintiffs for asserting their rights to record and engage union representation.

In every respect, Plaintiffs are asserting collective bargaining rights created by Chapter 4117. With respect to Plaintiffs' first claim that they were prevented from recording interviews, it is clear that R.C. 4117.11(A)(1) applies. That section states that is an unfair labor practice for a public employer to "restrain or coerce employees in the exercise of the rights guaranteed in Chapter 4117 of the Revised Code." *See, e.g.*, *In the Matter of City of Cincinnati*, SERB No. 93-010 (6-10-93)( (Discussing whether tape-recording of pre-disciplinary interviews is a permissive or mandatory

subject of bargaining under 4117.11).[3] Similarly, regarding the second claim, the level of participation to be afforded a union representative and a union representative's entitlement to participate in meetings between employee and employers are clearly the subject of the collective bargaining rights embodied in Chapter 4117. R.C. 4117.03 protects public employee's right to representation by an employee organization. *See, e.g., In the Matter of City of Cleveland*, SERB No. 1997-017 (11-21-97) (Discussing the level of participation that should have been afforded to a union representative during an investigatory issue under R.C. 4117.11(A)(1))[4]; *In the Matter of State of Ohio, Bureau of Workers' Compensation*, 1995-023 (12-29-95) (Discussing whether R.C. 4117.11 was violated when a public employee union representative was excluded from a meeting that was non-routine and relevant to the employer employee relationship.)[5].

Lastly, with respect to Plaintiff's claim of retaliation, R.C. 4117.11(A)(3) states that it is an unfair labor practice for a public employer, its agents, or representatives to discriminate in regard to any term or condition of employment on the basis of the exercise of rights guaranteed by Chapter 4117. Claims regarding regulation that are predicated on the City's interference with Plaintiffs' right to union representation are expressly reserved to the exclusive jurisdiction of SERB.

---

[3] A copy of this SERB decision is publicly available and can be found at:
https://serb.ohio.gov/wps/portal/gov/serb/documents-and-decisions/board-opinions/opinion-93-010
[4] A copy of this SERB decision is publicly available and can be found at:
https://serb.ohio.gov/wps/portal/gov/serb/documents-and-decisions/board-opinions/opinion-97-017
[5] A copy of this SERB decision is publicly available and can be found at:
https://serb.ohio.gov/wps/portal/gov/serb/documents-and-decisions/board-opinions/opinion-95-023

Here, despite Plaintiffs' best efforts to cast their claims as constitutional violations to be resolved by the federal judiciary, Plaintiffs have not asserted any claims that fall outside the scope of Chapter 4117. *See generally*, *Franklin Cty. Law Enforcement Assn.* 59 Ohio St. 3d at 169. Limited exceptions to SERB's exclusive jurisdiction based on the assertion of rights arising in a capacity other than as a public employer do not apply here; Plaintiffs' claims necessarily depend on their public employee status and the vindication of rights that arise under Chapter 4117.

Accordingly, Plaintiffs cannot obtain the relief they are seeking from this Court, as this Court lacks original jurisdiction. *Bero*, 2001 U.S. Dist. LEXIS at *8. SERB has the ability to render any judgment Plaintiffs seek, including temporary or injunctive relief, which SERB could seek on Plaintiffs' behalf by petition to this Court if SERB deems it appropriate. Ohio Rev. Code 4117.12(C).

### C. The remaining factors of the preliminary injunction analysis further indicate the motion should be denied

Although the "likelihood of success" prong has been deemed the most important to a court's analysis and is often determinative, it is useful to consider the other three factors as they relate to Plaintiffs' claims. *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998). First, because Plaintiffs are unable to establish a substantial likelihood of success on the merits of their First Amendment claim, they are equally unable to establish the possibility of irreparable harm as a result of the deprivation of the claimed free speech rights. *Cf. Dayton Area Visually Impaired Persons, Inc. v. Fisher*, 70 F.3d 1474, 1490 (6th Cir. 1995). Similarly, the lack of First Amendment infringement also cuts against a finding as whether the public interest

is at issue is also dependent of a determination of likelihood success on the merits. *Connection Distrib. Co.,* 154 F.3d at 288. Additionally, the risk of possible harm to Plaintiffs or the general public is minimal in this situation as the City has affirmatively agreed to continue recording the entirety of all CCA interviews.[6] Given the absence of a likelihood of success on the merits and irreparable harm, the Court need not evaluate or balance the remaining factors. *See Patio Enclosures, Inc. v. Herbst*, 39 Fed. Appx. 964, 970 (6th Cir. 2002). Thus, in total, these factors weigh against the issuance of a temporary restraining order or preliminary injunction.

## IV.    Conclusion

Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction should be denied.

Respectfully submitted,

**ANDREW W. GARTH (0088905)**

City Solicitor

*/s/ Lauren Creditt Mai*
Emily Smart Woerner (0089349)
Deputy City Solicitor
Lauren Creditt Mai (0089498)
Scott M. Heenan (0075734)
Assistant City Solicitors
Room 214, City Hall
801 Plum Street
Cincinnati, Ohio 45202
Phone: (513) 352-4703
Fax: (513) 352-1515
E-mail: lauren.credittmai@cincinnati-oh.gov
*Trial Counsel Defendants*

---

[6] City Defendants acknowledge there is a factual dispute regarding whether CCA investigators previously stopped or "selectively recorded" interviews.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 27, 2021, a true and accurate copy of the foregoing Notice of Appearance was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system and copies will be mailed to those parties who are not served via the Court's electronic filing system.  Parties may access this filing through the Court's system.

*/s/ Lauren Creditt Mai* 

Lauren Creditt Mai (0089498)