## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **DAN HILS, et al.** | : | **Case No. 1:21cv475** |
| | : | |
| **Plaintiffs,** | : | **Judge Barrett** |
| | : | |
| **v.** | : | |
| | : | |
| **GABRIEL DAVIS, et al.** | : | **DEFENDANTS' RULE 12(b)(1) and** |
| | : | **12(b)(6) MOTION TO DISMISS** |
| | : | |
| **Defendants.** | : | |

Pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, through the accompanying memorandum of law, Defendants Gabriel Davis, Ikechuckwu Ekeke, and the City of Cincinnati (collectively "the City") hereby move this Court to dismiss Plaintiffs' complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). All claims should be dismissed as a matter of law.

Respectfully submitted,

**ANDREW W. GARTH (0088905)**
**City Solicitor**

*/s/ Lauren Creditt Mai*
Emily Smart Woerner (0089349)
Deputy City Solicitor
Lauren Creditt Mai (0089498)
Scott M. Heenan (0075734)
Assistant City Solicitors
Room 214, City Hall
801 Plum Street
Cincinnati, Ohio 45202
Phone: (513) 352-4703
Fax: (513) 352-1515
E-mail: lauren.credittmai@cincinnati-oh.gov
*Trial Counsel Defendants*

## MEMORANDUM IN SUPPORT

### I.    INTRODUCTION

Dan Hils, Charles Knapp, Ken Byrne, and Adarryl Burch ("Plaintiffs") are current employees of the Cincinnati Police Department challenging the actions of the employees of the City of Cincinnati Citizen Complaint Authority ("CCA"), Gabriel Davis and Ikechuckwu Ekeke (collectively "the City") regarding the CCA's recording policy.   Specifically, Plaintiffs claim that the City's actions violated their First Amendment rights.   These claims are legally deficient and should be dismissed.

Defendants move to dismiss this action on several grounds. First, the Plaintiffs lack standing to challenge the CCA recording policy because they have not suffered any cognizable injury.  Further, to the extent that Plaintiffs have raised any claims outside the confines of their constitutional arguments, those claims constitute labor disputes whose disposition is reserved to the exclusive jurisdiction of the Ohio State Employment Relations Board ("SERB"). Second, Plaintiffs have failed to state a claim upon which relief may be granted as there is no First Amendment right to record CCA interviews.  Finally, Defendants Davis and Ekeke, are entitled to qualified immunity.

### II.    BACKGROUND

Plaintiffs filed their Complaint (Doc. #1) and Motion for Temporary Restraining Order/Preliminary Injunction ("Motion for TRO") (Doc. #2) on July 15, 2021.  On July 25, 2021, the City filed a Response in Opposition to the Motion for TRO (Doc. #11).  Plaintiffs replied on August 2, 2021 (Doc. #12).  The City's motion argued that a temporary restraining order should not be issued for two independent reasons.  First, there is no First Amendment right to record the interviews of the

CCA. (*See generally* Doc. #11, PageID 51-62). Second, the Ohio State Employment Relations Board ("SERB") has exclusive jurisdiction over Plaintiffs' claims. (*See generally*, Doc. #11, PageID 62-65). Those motions are pending before the Court. The instant motion asks this Court to dismiss Plaintiffs' claims in their entirety pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction and Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, and the grounds for dismissal are nearly identical to the arguments raised in City's Response in Opposition to the Motion for TRO.

## III.    STATEMENT OF RELEVANT FACTS[1]

The current dispute involves members of the Cincinnati Police Department, the Fraternal Order of Police, Lodge #69 ("FOP"), and the CCA. In the summer of 2021, Cincinnati Police Officers, Plaintiffs Knapp, Byrne, and Burch, were the subject of separate investigations conducted by the CCA in response to citizen complaints. (Complaint, Doc. #1, ⁋3-5). Plaintiff Hils, the current president of the FOP, represented these officers during their CCA investigatory interviews in his capacity as a union representative. (*Id.* ⁋2). The CCA is an independent department within the City of Cincinnati tasked with investigating complaints of police misconduct. Defendant Davis is the Director of the CCA and Defendant Ekeke is an investigator with the CCA. (*Id.* ⁋7, 8).

---

[1] The Statement of Facts draws from allegations contained in the Complaint, reflecting the Court's obligation on a Rule 12(b)(6) motion to accept as true all factual allegations and draw all reasonable inferences in favor of the plaintiff. The statement of facts is intended to assist the Court. The City does no conceded the truth of Plaintiff's allegations.

The CCA was created and codified as a result of the historic Collaborative Agreement regarding police practices in Cincinnati. The purpose behind the CCA is to foster more trust and cooperation between the police and the public by conducting independent, civilian investigations into police conduct, including uses of force. *State v. Cincinnati Citizen Complaint Authority*, 139 N.E.3d 947, 2019-Ohio-5349 (1st Dist.), ¶ 1. Because the CCA conducts administrative investigations into whether City employees followed City policies and practices, providing truthful and accurate information to the CCA is a condition of the City employees' employment. Cincinnati Administrative Code, Article XXVIII, Section 2-B.[2] Consistent with their rights under the collective bargaining agreement, officers may have a representative from their union present during the interview conducted by the CCA investigator. *See* CAC, Art. XVIII Sec. 3-B. These interviews are conducted inside the offices of the CCA, and they are not open to the public. The interviews are essentially a civilian equivalent of interviews conducted by the CPD Internal Investigations Section.

According to the Complaint, starting sometime in July 2021, Plaintiff Hils became concerned with what he describes as "selective recording technique" utilized by Defendant Ekeke. (Complaint, Doc. #1, ⁋13). In response, Plaintiff Hils began to make personal recordings of interviews with the CCA. (Id. ⁋15). The CCA does not permit any persons who are being interviewed or representatives of those persons to make their own recordings of witness interviews or utilize personal recording devices

---

[2] The Cincinnati Administrative Code is available online at
https://library.municode.com/oh/cincinnati/codes/code_of_ordinances?nodeId=THADCO_ARTXXVIII
CICOAU_S1PU.

4

during the interview. (Id. Ex. A). On July 14, 2021, during a CCA interview with Plaintiff Knapp, Plaintiff Hils was informed that personal recordings were not permitted. Plaintiff Hils refused to stop recording and the interview was terminated. (Id. ¶17). This pattern was repeated on July 15, 2021, when Plaintiff Hils again refused to stop recording during the interviews of Plaintiff Burch and Byrne. (Id. ¶ 19). Although interviews were temporarily suspended as a result of Plaintiff Hils' conduct, no further action was taken against any of the officers involved in these investigations and, importantly, no adverse findings have been made by the CCA.

On July 15, 2021, Plaintiff Hils filed an Unfair Labor Practice Charge with the Ohio State Employees Relations Board, alleging the City committed several unfair labor practices by preventing the FOP "from recording interviews." (Doc. #11-1).[3] This charge is still pending before SERB.

## IV.   JURISDICTION AND ARGUMENT

This Court should dismiss Plaintiffs' Complaint because the Plaintiffs lack standing to challenge the City's actions as they have not suffered an injury in fact as a result of the CCA's prohibition on recording and the Ohio State Employment Relations Board ("SERB") maintains exclusive jurisdiction over labor disputes. Even if Plaintiffs were able to establish this Court's jurisdiction, their claims still fail for

---

[3] The Unfair Labor Practice Charge was attached as Exhibit A to the City's Response in Opposition to the Motion for TRO (Doc. #11-1). The Court may take judicial notice of this public record without converting the instant motion into a motion for summary judgment. *See*, e.g. *Kostrzewa v. City of Troy*, 257 F.3d 633, 644 (6th Cir. 2001); *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999); *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997).

the simple reason that there is no First Amendment right to record the interviews of the CCA. As a result, Plaintiffs' Complaint should be dismissed in its entirety.

### A. Plaintiffs lack standing to challenge the City's actions because they have not suffered a cognizable injury.

Under Fed.R.Civ.P. 12(b)(1), this matter should be dismissed because Plaintiffs do not have standing to challenge the City's alleged conduct, thus leaving this Court without subject matter jurisdiction. Although Plaintiffs argue that they have a First Amendment right to record interviews conducted by the CCA, they do not address the question of standing to challenge the recording policy as applied by the CCA. Plaintiffs do not assert that they have suffered any actual injury by being prohibited from making a personal recording of the CCA interviews. Instead, they proceed directly to arguments under the First Amendment.

Article III, Section 2 of the United States Constitution limits federal courts' jurisdiction to "Cases" and "Controversies." As a result, "a plaintiff must demonstrate standing for each claim he seeks to press." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734, 128 S.Ct. 2759. To have standing, a plaintiff must allege (1) an injury in fact (2) that's traceable to the defendant's conduct and (3) that the court can redress. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 59-61, 112 S.Ct. 2130, 119 L.Ed. 2d 351 (1992). The key question here is whether Plaintiff's allegation – that they were prevented from creating personal recordings of CCA interviews – establishes a cognizable injury in fact. To satisfy this imperative, Plaintiffs must establish the "'invasion of a legal protected interest' that is 'concrete and particularized' and 'actual

6

or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins,* 136 S.Ct. 1540, 1548, 194 L.Ed. 2d 635 (2016) (quoting *Lujan*, 503 U.S. at 560).

Plaintiffs have not identified any legally cognizable harm with regard to their assertion that they will suffer an injury by being prohibited from making personal recordings of CCA interviews inside the interview. No part of the CCA policy prevents Plaintiffs from attending the interviews, so long as their presence is not disruptive. Nor does the policy prevent Plaintiffs taking notes for any purpose and reporting on the proceedings to the public. Finally, the CCA records all interviews and such records are publicly available pursuant to Ohio Rev. Code 149.43(A)(1). Although viewing the complaint in the light most favorable to the Plaintiffs this Court must accept the premise that the CCA were "selectively recording,"[4] surely any anomalies in the recordings would be readily apparent to the public.

This situation is analogous to the claims raised by the plaintiff in *McKay v. Federspiel*, 2014 WL 7013574, *7-8 (E.D. Mich. Dec. 11, 2014) *aff'd on other grounds McKay v. Federspiel*, 823 F.3d 862 (6th Cir. 2016). There, the court found a plaintiff lacked standing to challenge a local courthouse ban on electronic devices in a courtroom. The court reasoned that the plaintiff suffered no actual injury from being prevented from recording inside the courtroom because he was not denied the right to attend and observe the courtroom proceedings, was able to take notes and report on the proceedings to the public, and could request an official transcript of the proceedings. *Id.* Here, Plaintiffs enjoy similar access to the CCA interviews,

---

[4] The City vehemently disputes that selective recordings occurred and has been working to ensure that any breaks in the recordings are noted on the record so there is no confusion moving forward.

including access to the official audio recordings made by CCA. Because Plaintiffs

have not suffered any injury, they have no standing to challenge the City's actions.

**B. The Ohio State Employment Relations Board has exclusive jurisdiction over Plaintiffs' claims**

This matter should also be dismissed under Fed. R. Civ. P. 12(b)(1) because

SERB has exclusive jurisdiction to consider Plaintiffs' unfair labor claims.

In creating Chapter 4117 of the Ohio Revised Code, the Ohio legislature

established a comprehensive legal framework "for the resolution of public sector labor

disputes by creating a series of new rights and setting forth specific procedures and

remedies for the vindication of those rights." *Franklin County Law Enforcement

Ass'n*, 59 Ohio St. 3d 167, 169 (1991). *Id.* Specifically, R.C. 4117.11 provides that

public employees and employers have a right to be free from "unfair labor practices."

Where employees have alleged an unfair labor practice, Chapter 4117 does not

provide for the filing of an original complaint in another court. *Franklin County Law

Enforcement Ass'n*, 59 Ohio St. 3d at 170. Rather, the remedies and procedures

outlined in Chapter 4117 are exclusive. *Id. See also, Zafiru v. Cleveland Mun. Sch.

Dist.*, 448 Fed. Appx. 531, 546 (6th Cir. 2011) (finding that where a complaint is

"essentially an allegation of an unfair labor practice," SERB has exclusive jurisdiction

and the courts cannot review such claims on primary jurisdiction); *Bero v. Eastern

Knox County Joint Fire Dist.*, 2011 U.S. Dist. LEXIS 124570 *8 (S.D. Ohio Oct. 27,

2011) (finding the federal court did not have jurisdiction over plaintiff's claim of

retaliation for union activity because SERB exercises exclusive jurisdiction over

claims which meet the state law definition of an unfair labor practice).

8

If Plaintiffs pled viable Constitutional violations, the filing of an unfair labor practice claim with SERB would not have deprived this court of jurisdiction to hear their claims, regardless of any factual overlap between the labor dispute and Constitutional claims. *See, for example, Unger v. City of Mentor*, No. 1:08 CV 2000, 2009 U.S. Dist. LEXIS 150684 (N.D. Ohio) and *Franklin Co. Law Enforcement Ass'n v. FOP*, 59 Ohio St.3d 167, 572 N.E.2d 87 (1991). However, given that constitutional claims should be dismissed for the reasons outlined below, there are no further issues that this court may decide.

### C. Plaintiffs have failed to state a claim upon which relief can be granted because there is no First Amendment right to record interviews

Even if the Plaintiffs are able to establish standing their claims still fail as there is no First Amendment right to record interviews conducted by the CCA. Accordingly, their claims must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal where a complaint fails "to state a claim upon which relief can be granted." In reviewing a Rule 12(b)(6) motion, the facts alleged by a plaintiff must be accepted as true. *Scheuer v. Rhodes*, 416 U.S. 232, 236, (1974). *See also Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a challenge under Fed. R. Civ. P. 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Though well-pleaded factual allegations must be accepted by the Court as true, there is no requirement that courts "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Complaints must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusations" and mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Complaints that offer only "naked assertion[s]" devoid of "further factual enhancement" are appropriate for dismissal. *Twombly*, 550 U.S. at 557.

Plaintiffs bring two underlying causes of action via 42 U.S.C. § 1983: (1) an alleged violation of the First Amendment right to record and (2) a claim of First Amendment retaliation. A *prima facie* case of First Amendment retaliation under 42 U.S.C. § 1983 requires a plaintiff to demonstrate that (1) they are engaged in constitutionally protected activity, (2) defendants' adverse action caused them to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in the activity, and (3) the adverse action was motivated, at least in part, as a response to the exercise of their constitutional rights. *Farhat v. Jopke,* 370 F.3d 580, 588 (6th Cir. 2004). Therefore, to succeed on either claim, Plaintiffs must establish that there is a constitutional right to record CCA interviews. They cannot meet this burden as there is (a) no general First Amendment right to record governmental meetings; (b) the right of access to gather news is limited; (c) the CCA

policy is viewpoint neutral and reasonable; and (d) the CCA policy represents a reasonable restriction by a public employer on the conduct of its employees.

   a. **Plaintiffs are not engaged in constitutionally protected activity as they do not have an established a right to record CCA interviews.**

Plaintiffs do not have a constitutional right to record CCA interviews. In an attempt to create such a right, they have cited this court to multiple cases about people who have recorded police activity that has occurred *in public*. *Glik v. Cunniffe*, 655 F.3d 78, 82 (1st Cir. 2011) ("The filming of government officials engaged in their duties *in a public place*, including police officers performing their responsibilities, fits comfortably within these [First Amendment] principles.") (emphasis added); *Gericke v. Begin*, 753 F.3d 1, 7-8 (1st Cir. 2014) (extending *Gilk* to traffic stops, which also occur *in public*); *Smith v. City of Cumming,* 212 F.3d 1332 (11th Cir. 2000) (there is "a First Amendment right, subject to reasonable time, manner and place restrictions, to photograph or videotape police conduct"); and *Crawford v. Geiger*, 131 F.Supp.3d 703, 715 (S.D. Ohio 2015) ("that there is a First Amendment right openly to film police officers carrying out their duties *in public.*").

Defendants do not question that there is a First Amendment right to film the government officials, including police officers, carrying out their duties *in public*, subject to normal time, manner, and place restrictions. Perhaps if the CCA conducted its interviews in the middle of Fountain Square, the cases cited by Plaintiffs would be applicable. But the fatal flaw in Plaintiffs' analysis is that the CCA interviews do **not** occur in public, nor are they open to the public at any time. In such a setting, there is no constitutional right to record. As caselaw demonstrates, there is a practical

and constitutional world of difference between what takes place on a public street and what takes place in an interview room.

Even in settings where there is an unquestionable right for the public to attend (which is not this case), courts have rejected a right to record. In *Whiteland Woods, L.P. v. Township of West Whiteland*, the plaintiff, a real estate developer, asserted that its First and Fourteenth Amendment rights were violated by the defendant township's refusal to allow the plaintiff to videotape a meeting of the township planning commission. 193 F.3d 177, 178 (3rd Cir. 1998). The *Whiteland Woods* court found [the plaintiff] had a constitutional right of access to the Planning Commission meeting" but noted that "the public's right of access is not absolute" and that "the First Amendment does not require unfettered access to government information." *Id.* at 181-182. Finding that the plaintiff "had failed to demonstrate an essential nexus between the right of access and a right to videotape the Planning Commission proceedings," the court concluded that its "right of access to Planning Commission meetings did not create a federal constitutional right to videotape the meetings." *Id.* at 183-184.

The Northern District of Ohio relied upon *Whiteland Woods* in *Maple Heights News v. Lanksy,* where it found that First Amendment rights were not violated when government officials removed the plaintiffs' video camera from a council meeting. 2017 U.S. Dist. LEXIS 34639 (N.D. Ohio 2017). Analyzing the matter under First Amendment right-of-access principles, the court explained that the plaintiffs "failed to demonstrate any deprivation of their First Amendment rights, by virtue of [the

commissioner's] removal of their video camera from the Maple Heights City Council Meeting." Other courts have reached the same conclusion. *Rice v. Kempker*, 374 F.3d 675, 677-78 (8th Cir. 2004) (Media policy that prohibited cameras or tape-recording devices of any kind in the witness area of execution room did not infringe on liberties protected by First Amendment); *Johnson v. Adams*, 629 F.Supp. 1563, 1564 (E.D. Tex. 1986) (holding as matter of law that First Amendment did not require that videotaping of commissioners' court sessions be allowed).

Here, the public has no right to attend the CCA interviews. Plaintiffs are present as a result of the conditions of their employment and the exercise of their collective bargaining rights. Because their presence is specifically restricted to their public employment, and not a right of the public to be present, Plaintiffs do not have a First Amendment right to record CCA interviews, and the rest of their arguments fail.

### b. Plaintiffs' presence at CCA interviews is required by their employment, not because of a right to gather news

Plaintiffs suggest that they have a constitutionally protected right of access to gather news. However, the Supreme Court has recognized that the First Amendment right of access to information is qualified and subject to limitations: "The right to speak and publish does not carry with it the unrestrained right to gather information." *Zemel v. Rusk,* 381 U.S. 1, 17, 85 S.Ct. 1271, 14 L.Ed.2d 179 (1965). As such, "[i]t has generally been held that the First Amendment does not guarantee the press a constitutional right of special access to information not available to the public

generally." *Branzburg v. Hayes,* 408 U.S. 665, 684, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972).

"The Constitution is neither a Freedom of Information Act nor an Official Secrets Act," and "[n]either the First Amendment nor the Fourteenth Amendment mandates a right of access to government information or sources of information within the government's control." *Houchins v. KQED, Inc.*, 438 U.S. 1, 14-15, 98 S.Ct. 2588, 57 L.Ed.2d 553 (1978). "The right of access to government information 'is not a tool for judges to pry open the doors of state and federal agencies because they believe that public access to this type of information would be a good idea. It is a qualified right to certain "proceedings and documents filed therein" and nothing more.'" *Phillips v. DeWine*, 841 F.3d 405, 419 (6th Cir. 2016) *quoting Wood v. Ryan*, 759 F.3d 1076 (9th Cir. 2014, Bybee, J., dissenting).

As recognized by the Sixth Circuit, this line of jurisprudence has led to an experience-and-logic test:

> First, the proceeding must be one for which there has been a "tradition of accessibility." This inquiry requires a court to determine "whether the place and process [to which access is sought] has historically been open to the press and general public." Second, public access must play a "significant positive role in the functioning of the particular process in question." Moreover, even if these elements are satisfied, the right of access is a qualified one and must be outweighed by a strong countervailing interest in maintaining the confidentiality of the proceedings. *Cincinnati Gas & Elec. Co. v. General Elec. Co.,* 854 F.2d 900 (6th Cir. 1988) quoting *Press-Enterprise v. Superior Court,* 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986).

In using that test, the Sixth Circuit has repeatedly found that there was no right of the press to gather information in situations similar to CCA interviews. *See*

14

*Cincinnati Gas & Elec. Co.*, *Id.* at 904 (summary jury trials); *Indianapolis Star v. United States*, 692 F.3d 424 (6th Cir. 2012) (search warrants); *United States v. Miami Univ.*, 394 F.3d 797 (6th Cir. 2002) (student disciplinary hearings); *Cyphert v. Scotts Miracle-Gro Co*831 F.3d 765 (6th Cir. 2016) (presentence reports).

As the Sixth Circuit stated in *Indianapolis Star*, "the importance of the confidentiality necessary for criminal investigations is well recognized." 692 F.3d at 432 *(*citations omitted). There, the court was dealing with search warrants. Here, we are dealing with an internal investigation of employee conduct. While this may be an investigation into alleged police misconduct, which is unquestionably an issue of public importance, even that does not create a First Amendment right of access. *See Paine v. City of Chicago*, No. 06 C 3171, 2006 U.S. Dist. LEXIS 78182, *14-21 (N.D Ill. 2006).

Plaintiffs have not established that there is a First Amendment right to gather news in CCA hearings. If such a right were to exist, it would exist only under Ohio law under either its Open Meetings Act or Public Records law. Notably and rightfully so, Plaintiffs have not suggested any violation of either.

### c. The CCA policy is viewpoint neutral and reasonable

Even if Plaintiffs could have shown that there was a limited right of access to CCA hearings, it would not change the fact that the CCA can prohibit third-party recordings and, further, that the policy it currently has is viewpoint neutral and reasonable.

Just last year, in *Enoch v. Hamilton Cty. Sheriff's Office*, the Sixth Circuit considered whether sheriff deputies violated a person's First Amendment rights by arresting them in a courthouse hallway for violating a local court rule related to video recording in the courthouse. 818 Fed.Appx. 398 (6th Cir. 2020). The rule in question prohibited "recording 'in any courtroom or hearing room, jury room, judge's chambers or ancillary area (to be determined in the sole discretion of the Court) without the express permission of the Court." *Id*. at 400 quoting Hamilton Cty. Common Pleas Court R. 33(D)(6).

Noting that the courthouse hallways amounted to a limited public forum, the court found that "the government is not required to and does not allow persons to engage in every type of speech" and "may restrict speech so long as the restrictions are viewpoint neutral and reasonable in light of the purpose to be served by the forum." *Id*. quoting *Hartman v. Thompson*, 931 F.3d 471, 479 (6th Cir. 2019) and *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106, 121 S.Ct. 2093, 150 L.Ed.2d 151 (2001) (internal quotations omitted). Finding that "[n]o one denies that Rule 33(D)(6) is a reasonable restriction on speech," the Sixth Circuit concluded that the plaintiffs' rights were not violated. *Id*. at 405.

Here, the CCA policy on not allowing recordings is viewpoint neutral and reasonable in light of the purpose to be served by the forum. It applies to all persons and their representatives. It serves a governmental interest in maintaining order during its proceedings. It ensures that what is discussed during the interview is not improperly broadcast and, in turn, improperly used to influence the testimony of

others appearing before the CCA. And by creating its own recording that it both preserves and ultimately provides to the officer, it leaves open adequate alternative channels for communication. *Maple Heights News, supra,* 2017 U.S. Dist. LEXIS 34639 at *7-8; *Whiteland, supra,* 193 F.3d at 183.

Plaintiffs, relying on the document attached to their Complaint, may argue that the policy is not neutral because it specifically refers to one of them, Defendant Hils, by name. Plaintiffs' exhibit, however, is a script created for the specific interviews at which Defendant Hils was present. It refers to Defendant Hils because he is the person who has been routinely making third-party recordings and who has refused to stop making those recordings. While the script may refer to Hils, the policy applies to all persons being interviewed and their representatives.

The CCA has the right to control its proceedings, which includes prohibiting third-party recordings, and Plaintiffs have not and cannot demonstrate otherwise. They cannot, therefore, show that they were engaged in a constitutionally protected activity and, in turn, cannot demonstrate any likelihood of success on the merits. Yet even if they had, they still could not prove a likelihood of success on the merits because of the limitations placed on employee-speech.

### d. A public employee's First Amendment rights at work are limited

Even if the general public enjoyed a First Amendment right to record CCA interviews, Plaintiffs have not shown that it is improper to limit their First Amendment rights as a term of their employment. As the Supreme Court found in *Garcetti v. Ceballos:* "When a citizen enters government service, the citizen by

**17**

necessity must accept certain limitations on her or her freedom." 547 U.S. 410, 418 (2006). While a public employee does not shed their First Amendment rights merely because of their government employment, the First Amendment's protection is not as robust as it is in other contexts. In particular, public employee speech receives First Amendment protection only when the employee "speak[s] as a citizen addressing mattes of public concern." *Id.* at 417 *citing Pickering v. Bd. of Educ. Of Twp. High Sch. Dist. 205, Will Cty.,* 391 U.S. 563, 568 (1968). In adopting this limitation, the Court sought to accommodate the inherent tension between affording public employees adequate First Amendment protection without constitutionalizing every employee grievance. *Id.* at 420.

Evaluation of this balance is done via a three-step inquiry. The first question is whether the speech at issue was made pursuant to the employee's official duties. *Garceti*, 547 U.S. at 417. Speech "pursuant to the employee's official duties" or "employee-speech" is unprotected. *Id.* at 413. For speech outside that realm, where an employee is speaking as a citizen, or "citizen-speech," the second step asks whether the speech touches on a matter of public concern. *Id.* If Plaintiffs' speech here was either (1) employee-speech or (2) citizen-speech that did not involve a matter of public concern, then their First Amendment claim fails as a matter of law. If, however, they satisfy the first two inquiries, then the third step requires a balancing of Plaintiffs' First Amendment rights with the City's need to promote "the efficiency of the public services it performs through its employees." *Id.* at 417 (quotation and citation omitted).

While *Garcetti* is instructive, it is not the last word the Supreme Court has spoken on the employee-speech/citizen-speech distinction. In *Lane v. Franks*, the Court modified *Garcetti's* "official duties" language by adding the term "ordinary." 573 U.S. 228, 240 (2014). So, under *Lane*, to take advantage of the "official duties" exception to the First Amendment protection, the public employer must show the speech related to the employee's "ordinary job responsibilities." *Id.*

The Sixth Circuit more recently concluded that the Court's intent in adding the word "ordinary" was to avoid transforming broad swaths of speech by employees into unprotected employee-speech "simply because it concern[ed] . . . the speaker's public employment. *Mayhew v. Town of Smyrna,* 856 F.3d 456, 463 (6th Cir. 2017). "Determining whether an employee speaks as a private citizen or as a public employee can be challenging," but the "inquiry is a practical one." *Id.* at 464 (quotation omitted). This inquiry is a legal question for the court to resolve. *Id.* at 462-646 *quoting Connick v. Myers*, 461 U.S. 138, 148, n.7 (1983); *see also, Fox v. Traverse City Area Pub. Sch. Bd. of Educ.*, 605 F.3d 346, 350 (6th Cir. 2010).

The speech at issue here was made by police officers during an investigatory hearing taking place with a CCA investigator that was mandatory as a condition of their employment or required as part of their role as a union representative. Plaintiffs cannot plausibly allege that their speech at issue here was pursuant to their ordinary duties. Therefore, they are not entitled to First Amendment protections for them. At most, they have a dispute related to the terms of their employment, as evidenced by the unfair labor practice charge filed by the FOP.

**D. Defendants Davis and Ekeke are entitled to qualified immunity**

Defendants Davis and Ekeke are entitled to qualified immunity for the claims brought against them in their individual capacity as their conduct did not violate a clearly established constitutional right.

Qualified immunity shields government officials from civil liability when their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Qualified immunity provides "ample protection to all but the plainly incompetent and those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986); see also *Miller v. Administrative Office of the Courts*, 448 F.3d 887, 896-97 (6th Cir. 2006). As qualified immunity is an immunity from suit, not just an immunity from liability, an official's entitlement to qualified immunity should be determined at the earliest stage of the proceedings. The plaintiff has the burden to establish that a defendant is not entitled to qualified immunity. *Miller*, 448 F.3d at 894.

Because there is no constitutional right to record CCA interviews for the reasons explained above, Plaintiffs cannot show that Defendants Davis and Ekeke violated a clearly established statutory or constitutional right of which a reasonable person would have known and they are entitled to qualified immunity.

## V. CONCLUSION

For the reasons above, the City respectfully requests this Court to dismiss the Complaint.

**ANDREW W. GARTH (0088905)**
**City Solicitor**

*/s/ Lauren Creditt Mai*
Emily Smart Woerner (0089349)
Deputy City Solicitor
Lauren Creditt Mai (0089498)
Scott M. Heenan (0075734)
Assistant City Solicitors
Room 214, City Hall
801 Plum Street
Cincinnati, Ohio 45202
Phone: (513) 352-4703
Fax: (513) 352-1515
E-mail: lauren.creditmai@cincinnati-oh.gov
*Trial Counsel Defendants*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 24, 2021, a true and accurate copy of the foregoing Notice of Appearance was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system and copies will be mailed to those parties who are not served via the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Lauren Creditt Mai*
Lauren Creditt Mai (0089498)