UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Dan Hils, *et al.*,

    Plaintiffs,

        v.                               Case No. 1:21cv475

Gabriel Davis, *et al.*,                       Judge Michael R. Barrett

    Defendants.

**OPINION & ORDER**

This matter is before the Court upon Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 2); Defendants' Motion to Dismiss (Doc. 14); Plaintiffs' Motion for Leave to File a Supplement to their Memorandum in Opposition to the Motion to Dismiss (Doc. 17); and Defendants' Supplemental Motion to Dismiss (Doc. 19). These motions have been fully briefed. (Doc. 11, 12, 15, 16, 18, 20, 21).

As a preliminary matter, Plaintiffs have filed a Motion for Leave to File a Supplement to their Memorandum in Opposition to the Motion to Dismiss (Doc. 17), which seeks to address the qualified immunity argument raised by Defendants in their Motion to Dismiss. Because the Court does not reach the issue of qualified immunity, Plaintiffs' Motion for Leave is DENIED as MOOT.

**I.**     **BACKGROUND**

Plaintiffs Dan Hils, Charles Knapp, Ken Byrne, and Adarryl Burch are current employees of the Cincinnati Police Department.

Defendants Gabriel Davis and Ikechuckwu Ekeke are employees of the Citizen Complaint Authority ("CCA"). (Id., ¶¶7, 8). The CCA is a department within the City of

Cincinnati. The CCA is responsible for investigating complaints of police misconduct. Defendant Davis is the Director of the CCA and Defendant Ekeke is an investigator with the CCA. (Id., ¶¶7, 8).

Knapp, Byrne, and Burch, were the subjects of citizen complaints before the CCA. (Doc. 1, ¶¶ 3-5). In his role as president of the Fraternal Order of Police, Lodge #69 ("FOP"), Hils represented the officers during the CCA's investigation of these complaints. (Doc. 1, ¶ 2). Hils became concerned with the "selective recording technique" used by Ekeke during interviews with officers. (Id., ¶ 13). According to the Complaint, Ekeke would turn off the CCA recording device at various times, which resulted in material, exculpatory statements made by the officers not being recorded. (Id.) In response, Hils began to make his own recordings of the interviews with the CCA. (Id., ¶ 15). However, when Hils has attempted to record the interviews, Ekeke and Davis terminated the interviews and threatened the officers with discipline for recording the interviews. (Id., ¶ 16). Plaintiffs have attached a script to their Complaint which contains the CCA policy regarding recording. (Doc. 1, PAGEID 9). It appears that this script was used during interviews with officers, and the officers were told:

> At this time, I'm advising you that CCA does not permit any persons who are being interviewed or representatives of those persons to make their own recordings of witness interviews or utilize personal recording devices during the interview.

(Id.)

Plaintiffs claim Defendants' no-recording policy violates their First Amendment right to record public officials in the performance of their duties. (Id., ¶¶ 23-24). Plaintiffs also bring a First Amendment retaliation claim, claiming that Defendants retaliated against Plaintiffs for their assertion of their rights. (Id., ¶¶ 27-29). Plaintiffs' claims are brought

pursuant to 42 U.S.C. § 1983.

In their Motion for Temporary Restraining Order and Preliminary Injunction, Plaintiffs seek an order enjoining Defendants from "preventing the tape or video recording by Plaintiff Hils in any City of Cincinnati City Complaint Authority matter in which he is representing any City of Cincinnati Police Officer, or the tape or video recording by any other Plaintiff of an interview before the City of Cincinnati City Complaint Authority in which that Plaintiff is the subject of the investigation;" and enjoining Defendants "from taking any adverse action against any of the Plaintiffs solely due to their tape or video recording proceedings before the City of Cincinnati City Complaint Authority." (Doc. 2)

In their original Motion to Dismiss, Defendants move pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure to dismiss Plaintiffs' claims. Defendants argue: (1) Plaintiffs lack standing to challenge the CCA recording policy because they have not suffered any cognizable injury; (2) Plaintiffs have raised claims which constitute labor disputes subject to the exclusive jurisdiction of the Ohio State Employment Relations Board ("SERB"); (3) Plaintiffs have failed to state a claim upon which relief may be granted because there is no First Amendment right to record CCA interviews; and (4) Davis and Ekeke, are entitled to qualified immunity.

In their supplemental Motion to Dismiss, Defendants explain that concurrent with this lawsuit, the FOP filed a charge with SERB alleging that based on the same set of events, the City committed an unfair labor practice by preventing the FOP "from recording interviews." (Doc. 11-1). Defendants explain further that on December 2, 2021, the City and the FOP entered into a settlement agreement resolving the unfair labor practice charge. (See Doc. 19-1). According to Defendants, the CCA has stopped using the

3

"script" or "policy" which was attached as Exhibit A to Plaintiffs' Complaint, and the settlement clarifies the recording policies and practices of the CCA. (Doc. 1, PAGEID 9). Defendants have filed a copy of the settlement agreement between the City and the FOP, which provides that the City agrees to the following:

> . . .
>
> 2. Should the Citizen Complaint Authority choose to conduct an interview of an FOP member, the CCA will utilize at least one recording device that will always be activated when the FOP member enters the room for their CCA interview.
>
> 3. With respect to the operation of its recording devices, no CCA recording device will be turned off until the interview is concluded, unless the Investigator announces a break in the interview. Before any recording is stopped, the Investigator shall advise all parties the recording is being stopped and note the start and stop time on the record. Investigators will refrain from asking questions during any break in recording.
>
> 4. Upon their request, FOP members will be provided a copy of the recording following the conclusion of their CCA interview.
>
> . . .

(Doc. 19-1, PAGEID 160). Defendants argue that as a result of this settlement, Plaintiffs' constitutional claims for declaratory and injunctive relief are now moot.

## II. ANALYSIS

### 1. Preliminary injunction standard

"Four factors determine when a court should grant a preliminary injunction: (1) whether the party moving for the injunction is facing immediate, irreparable harm, (2) the likelihood that the movant will succeed on the merits, (3) the balance of the equities, and (4) the public interest." *D.T. v. Sumner Cty. Sch.*, 942 F.3d 324, 326 (6th Cir. 2019) (citing *Benisek v. Lamone*, 138 S. Ct. 1942, 1943-44 (2018)). These four factors are "to be balanced, not prerequisites that must be met." *Jones v. City of Monroe*, 341 F.3d 474,

4

476 (6th Cir. 2003) (citing *In re DeLorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir. 1984)). However, as the Sixth Circuit has recently explained:

> "When a party seeks a preliminary injunction on the basis of a potential constitutional violation, 'the likelihood of success on the merits often will be the determinative factor.'" *[City of Pontiac Retired Emps. Ass'n v.] Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (quoting *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012)). In addition to demonstrating a likelihood of success on the substantive claims, a plaintiff must also show a likelihood of success of establishing jurisdiction. *Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 900 F.3d 250, 256 n.4 (6th Cir. 2018). If a plaintiff cannot show a likelihood of jurisdiction, then the court will deny the preliminary injunction. *Id*.

*Memphis A. Philip Randolph Inst. v. Hargett*, 2 F.4th 548, 554 (6th Cir. 2021). Here, Defendants have raised two jurisdictional challenges: standing and mootness. The Court will address those challenges before turning to a likelihood of success on the substantive claims.

### 2. Article III Mootness

Defendants maintain that Plaintiffs' claims for or injunctive and declaratory relief are moot because the settlement agreement legally binds the City to its new policies; and there is no basis for a belief that the City will revert to the now defunct recording policy. Plaintiffs respond that the settlement between the FOP and the City does not provide them with the relief they seek because it does not permit the officers to record the interviews and it does not prohibit retaliation against Plaintiffs. Plaintiffs also point out that the Complaint seeks money damages which are not addressed by the change in policy.

As the Sixth Circuit has recently reiterated: "Mootness is a high hurdle. The government must show that a court could order no 'effectual relief whatever' for the plaintiffs' injury." *Vitolo v. Guzman*, 999 F.3d 353, 359 (6th Cir. 2021) (quoting *Chafin v.*

5

*Chafin*, 568 U.S. 165, 172, 133 S.Ct. 1017, 185 L.Ed.2d 1 (2013); *see also Ramsek v. Beshear*, 989 F.3d 494, 499 (6th Cir. 2021) ("To assess whether a case is moot, we ask 'whether the relief sought would, if granted, make a difference to the legal interests of the parties.'") (quoting *McPherson v. Mich. High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 458 (6th Cir. 1997) (en banc)).

"Voluntary cessation of the alleged illegal conduct does not, as a general rule, moot a case and 'deprive the tribunal of power to hear and determine the case.'" *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 767 (6th Cir. 2019) (quoting *Los Angeles Cty. v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979)). "Voluntary cessation will only moot a case where there is 'no reasonable expectation that the alleged violation will recur,' and 'interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" *Id*. (quoting *Davis*, 440 U.S. at 631, 99 S.Ct. 1379 (cleaned up)). However, as the Sixth Circuit has explained:

> "[T]he burden in showing mootness is lower when it is the government that has voluntarily ceased its conduct[,]" because the government's ability to "self-correct[ ] provides a secure foundation for a dismissal based on mootness so long as [the change] appears genuine." *Speech First*, 939 F.3d at 767 (quoting *Bench Billboard Co. v. City of Cincinnati*, 675 F.3d 974, 981 (6th Cir. 2012)). "[W]e presume that the same allegedly wrongful conduct by the government is unlikely to recur." *Id*. However, "[w]hile all governmental action receives some solicitude, not all action enjoys the same degree of solicitude ... [the Court] takes into account the totality of the circumstances surrounding the voluntary cessation, including the manner in which the cessation was executed." *Id*.

*Thomas v. City of Memphis, Tennessee*, 996 F.3d 318, 324 (6th Cir. 2021). The Sixth Circuit has "provided the following framework for addressing what degree of solicitude—or deference—is owed to a government entity that voluntarily ceases allegedly illegal conduct:"

6

> Where the government voluntarily ceases its actions by enacting new legislation or repealing the challenged legislation, that change will presumptively moot the case unless there are clear contraindications that the change is not genuine.
>
> On the other hand, where a change is merely regulatory, the degree of solicitude the voluntary cessation enjoys is based on whether the regulatory processes leading to the change involved legislative-like procedures or were ad hoc, discretionary, and easily reversible actions.
>
> If the discretion to effect the change lies with one agency or individual, or there are no formal processes required to effect the change, significantly more than the bare solicitude itself is necessary to show that the voluntary cessation moots the claim.
>
> Where regulatory changes are effected through formal, legislative-like procedures, we have found that to moot the case the government need not do much more than simply represent that it would not return to the challenged policies.

*Id*. at 324 (citing *Speech First*, 939 F.3d at 768-69). Here, the change made by Defendants is the result of something akin to a regulatory change implemented by the City. While the policy change is a pursuant to a "discretionary" procedure, the challenged policy is the subject of a settlement agreement between the City and FOP. This settlement agreement increases the "formality" of a government's regulatory change. *See Thomas*, 996 F.3d at 325. Given the totality of the circumstances surrounding the City's voluntary cessation, there is no reasonable expectation that the alleged violation will recur. Therefore, to the extent that Plaintiffs seek an injunction or declaratory relief based upon the CCA's selective recording of interviews, Plaintiffs' claim is moot.

However, Plaintiffs argue that the settlement agreement between the City and the FOP has no impact on their claim that the City has violated their right to record public officials in the performance of their duties. Plaintiffs explain that they still seek an injunction which would permit officers being interviewed by the CCA to also record the

7

interviews. Defendants maintain that Plaintiffs lack standing to bring this claim because they have not identified any legally cognizable harm which will result if they are prohibited from making their own personal recordings of CCA interviews.

### 3. Standing

Standing requires plaintiffs to demonstrate "actual present harm or a significant possibility of future harm." *Savage v. Gee*, 665 F.3d 732, 740 (6th Cir. 2012) (quoting *National Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997)). To have standing, a plaintiff must (1) have suffered an injury in fact, (2) that is fairly traceable to the challenged action of the defendant, and (3) that will likely be redressed by a favorable decision. *Lujan v. Def's of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L.Ed.2d 351 (1992). "A plaintiff bears the burden of demonstrating standing and must plead its components with specificity." *Coyne v. American Tobacco Co.*, 183 F.3d 488, 494 (6th Cir. 1999) (citing *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982)).

Before beginning this analysis, the Court must make clear which policy is being challenged. Defendants explain that they have stopped using the script or policy attached to Plaintiffs' Complaint which provided that "CCA does not permit any persons who are being interviewed or representatives of those persons to make their own recordings of witness interviews or utilize personal recording devices during the interview." (Doc. 1, PAGEID 9; Doc. 19, PAGEID 154). However, unlike the selective recording practice, the policy prohibiting Plaintiffs from recording interviews is not a part of the settlement agreement with the FOP. Plaintiffs allege that Defendants Davis and Ekeke have indicated that they will continue to prohibit the personal recording of interviews of the

8

CCA. (Doc. 1, ¶ 20). Moreover, in the briefing for its Motion to Dismiss, the City has made clear that it takes the position that there is no First Amendment right to individually record the interviews of the CCA. (Doc. 21, PAGEID 169). Therefore, the Court must conclude, based on the current record, that if Plaintiffs attempted to record the interviews, they would once again be prohibited from doing so. Accordingly, the Court will treat Plaintiffs' claim as a pre-enforcement First Amendment challenge and turn to a determination regarding the injury-in-fact requirement.

To satisfy the injury-in-fact requirement, Plaintiffs must allege "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159-160, 134 S.Ct. 2334, 189 L.Ed.2d 246 (2014) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979)). Because Plaintiffs have alleged facts demonstrating that they face a credible threat that the City's no-recording policy will be enforced against them in the future, the Court concludes that Plaintiffs have standing to assert their pre-enforcement challenge to the policy.

Nevertheless, the standing analysis and the substantive analysis are not coextensive. *See Warth v. Seldin*, 422 U.S. 490, 500, 95 S. Ct. 2197, 2206, 45 L. Ed. 2d 343 (1975) (explaining that "standing in no way depends on the merits of the plaintiff's contention that particular conduct is illegal"). Defendants argue that Plaintiffs have failed to state a claim under the First Amendment. The Court will now turn to the analysis of the merits of Plaintiffs' claim under the motion to dismiss standard. Because Defendants' position on Plaintiffs' likelihood of success on the merits is identical to their motion to

9

dismiss, the Court will analyze these questions together. *Accord Easterling v. Cassano's Inc.*, No. 3:15-CV-032, 2015 WL 1396462, at *1 (S.D. Ohio Mar. 25, 2015); *see also Leisure v. Franklin Cty. Ct. of Common Pleas*, No. 2:05-CV-1123, 2006 WL 1281764, at *6 (S.D. Ohio May 8, 2006) ("A plaintiff who fails to state a claim upon which relief can be granted cannot show a likelihood of success on the merits.") (citations omitted)).

### 4. First Amendment

In their Complaint, Plaintiffs bring two claims under the First Amendment. The first claim is that Defendants' no-recording policy violates their First Amendment right to record public officials in the performance of their duties. The second claim is that Defendants have retaliated against Plaintiff for their assertion of their First Amendment rights.

In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff's claim has this baseline plausibility if the facts stated therein "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The standard set forth by the Supreme Court in *Twombly* and *Iqbal* requires "more than a sheer possibility" that the defendant is liable, but a claim need not rise to the level of probability. *Id*.

Plaintiffs' claim challenging the no-recording policy is based on access to information as opposed to the right to expression. *See S.H.A.R.K. v. Metro Parks Serving Summit Cty*., 499 F.3d 553, 559 (6th Cir. 2007); *see also Knight v. Montgomery Cty*., No. 3:19-CV-00710, 2019 WL 13109761, at *2 (M.D. Tenn. Aug. 16, 2019) ("the Court is not

convinced that a public forum analysis applies here, because that analysis focuses on the government's interference with a plaintiff's 'speech or other expressive activity' and the act of merely recording a governmental meeting is not expressive activity."). "Although access cases are rooted in First Amendment principles, they have developed along distinctly different lines than have freedom of expression cases." *S.H.A.R.K.*, 499 F.3d at 559. Under this line of cases, courts have concluded that "the First Amendment does not require unfettered access to government information." *Whiteland Woods, L.P. v. Township of West Whiteland*, 193 F.3d 177, 182 (3rd Cir. 1999); *see also S.H.A.R.K.*, 499 F.3d at 560 ("[n]either the First Amendment nor the Fourteenth Amendment mandates a right of access to government information or sources of information within the government's control.") (quoting *Houchins v. KQED, Inc.*, 438 U.S. 1, 15, 98 S.Ct. 2588, 57 L.Ed.2d 553 (1978)).

In that vein, courts have held that "[t]he First Amendment does not require states to accommodate every potential method of recording its proceedings, particularly where the public is granted alternative means of compiling a comprehensive record." *Maple Heights News v. Lansky*, No. 1:15CV53, 2017 WL 951426, at *3 (N.D. Ohio Mar. 10, 2017) (quoting *Whiteland*, 193 F.3d at 183); *see also Combined Communications Corp. v. Finesilver*, 672 F.2d 818, 821 (10th Cir. 1982) (upholding ban on the use of television cameras during court-ordered redistricting negotiations where the press was free to attend, take notes, and disseminate any information obtained).

In order to determine whether a plaintiff has a lawful right of access to the information and the government's rule blocking access is unconstitutional, the Sixth Circuit has established the following framework:

> First, we ask what rule the government is invoking that prohibits the plaintiffs from access to information, and whether that rule "selectively [ ] delimit[s] the audience." . . . Second, we inquire into the government's stated interest for invoking the rule. Third, we apply the applicable test to determine whether the government's stated interest is sufficiently related to the means of accomplishing that interest: if the rule does not selectively delimit the audience, we uphold the restriction if it is reasonably related to the government's interest; if the rule does selectively delimit the audience, a stricter level of scrutiny will apply.

*S.H.A.R.K.*, 499 F.3d at 560-61 (quoting *D'Amario v. Providence Civic Ctr. Auth.*, 639 F.Supp. 1538, 1543 (D.R.I. 1986) *aff'd*, 815 F.2d 692 (1st Cir.), *cert. denied*, 484 U.S. 859, 108 S.Ct. 172, 98 L.Ed.2d 125 (1987)).

Here, Defendants are prohibiting officers who are being interviewed by the CCA from recording the interviews. There is nothing in the record indicating that this no-recording policy "selectively delimits the audience." Defendants ban all recording except for the recording made by CCA itself. Defendants explain that their interest in invoking the ban on recording is to maintain order; and to ensure that what is discussed during the interview is not improperly broadcast and, in turn, improperly used to influence the testimony of others appearing before the CCA. (Doc. 14, PAGEID 104-105). Because the policy does not selectively delimit the audience, Defendants' ban on recording will be upheld if it is reasonably related to this stated interest.

As one district court has observed: "[u]nder the rational basis review, a court usually will uphold regulations because 'the state's important regulatory interests are generally sufficient to justify them.'" *McKay v. Federspiel*, No. 14-CV-10252, 2014 WL 7013574, at *6 (E.D. Mich. Dec. 11, 2014), *aff'd*, 823 F.3d 862 (6th Cir. 2016) (quoting *Citizens for Legislative Choice v. Miller*, 144 F.3d 916, 921 (6th Cir.1998)). The Court has little hesitation finding that Defendants' interest is sufficient here. The stated mission

of the CCA is "to investigate serious interventions by police officers, including, but not limited to discharging of firearms, deaths in custody, and major uses of force, and to review and resolve citizen complaints of law enforcement misconduct in a fair and efficient manner." Citizen Complaint Authority, https://www.cincinnati-oh.gov/ccia/ (last visited 3/3/2022). The CCA cannot carry out its mission in a fair and efficient manner if parts of the investigation are recorded and then released before the investigation is completed. The Court notes that in public access cases, the Supreme Court "has traditionally considered whether public access plays a significant positive role in the functioning of the particular process in question." *Press-Enter. Co. v. Superior Ct. of California for Riverside Cty.*, 478 U.S. 1, 8–9, 106 S. Ct. 2735, 2740, 92 L. Ed. 2d 1 (1986) (citing *Globe Newspaper Co. v. Superior Ct. for Norfolk Cty.*, 457 U.S. 596, 606, 102 S. Ct. 2613, 2620, 73 L. Ed. 2d 248 (1982)). This is because:

> Although many governmental processes operate best under public scrutiny, it takes little imagination to recognize that there are some kinds of government operations that would be totally frustrated if conducted openly. A classic example is that "the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings."

*Id*. (quoting *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 218, 99 S.Ct. 1667, 1672, 60 L.Ed.2d 156 (1979)). Similarly, the investigation conducted by the CCA would be totally frustrated if recordings were to be made public before the investigation was complete. *Accord United States v. Miami Univ.*, 294 F.3d 797, 823 (6th Cir. 2002) ("We find that public access will not aid in the functioning of traditionally closed student disciplinary proceedings; accordingly, The Chronicle does not enjoy a qualified First Amendment right of access to such proceedings."). Therefore, the Court concludes that the no-recording policy is reasonably related to the legitimate concern that the CCA's

13

investigations are fair and efficient. *Accord S.H.A.R.K.*, 499 F.3d at 563 (concluding state park's prohibition on disturbing trees and its policy for handling found property justified removal of cameras placed in the park by animal rights group in order to videotape government-ordered deer culling in the park after hours).

In reaching this conclusion, the Court distinguishes this case from those cases in which courts have found that there is a constitutional right to film an encounter with a police officer. This case involves an internal investigation of police activity, which is entirely different than a citizen's encounter with a police officer. *Accord Clark v. Stone*, 998 F.3d 287, 303 (6th Cir. 2021), *cert. denied*, 142 S. Ct. 773 (2022) (rejecting the argument there is a clearly established First Amendment right to record social workers conducting home visits as part of their investigations because some courts have found a constitutional right to film an encounter with a police officer).[1]

The Court also distinguishes this case from the cases in which courts have recognized that videotaping or photographing public officials on public property could invoke First Amendment protection. *See, e.g.*, *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000) ("The First Amendment protects the right to gather information about what public officials do on public property, and specifically, a right to record matters of public interest."). The Court recognizes that "the First Amendment goes beyond

---

[1]Moreover, there are conflicting cases from within the Sixth Circuit as to whether there is a clearly established First Amendment right to film police officers carrying out their duties. *Davis-Bey v. City of Warren*, No. 16-CV-11707, 2018 WL 895394, at *6 (E.D. Mich. Jan. 16, 2018), report and recommendation adopted, No. 16-CV-11707, 2018 WL 878879 (E.D. Mich. Feb. 14, 2018) (citing cases); *but see Turner v. Lieutenant Driver*, 848 F.3d 678, 687 (5th Cir. 2017) ("No circuit has held that the First Amendment protection does not extend to the video recording of police activity, although several circuit courts have explained that the law in their respective circuits is not clearly established while refraining from determining whether there is a First Amendment right to record the police.").

14

protection of the press and the self-expression of individuals to prohibit government from limiting the stock of information from which members of the public may draw." *First Nat'l Bank v. Bellotti*, 435 U.S. 765, 783, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978). However, much of the analysis in these cases centers on the right to record matters taking place in public spaces. Here, the CCA interviews are not taking place in public, and therefore it is unnecessary to consider whether the recording may be subject to reasonable time, place, and manner restrictions.

Moreover, "neither the public nor the media has a First Amendment right to videotape, photograph, or make audio recordings of government proceedings that are by law open to the public." *Rice v. Kempker*, 374 F.3d 675, 678 (8th Cir. 2004); *see also Pizzuto v. Tewalt*, 997 F.3d 893, 906 (9th Cir. 2021) ("We find it implausible that the First Amendment right of access to governmental proceedings gives the public the right to videotape, photograph, or otherwise record those proceedings."); *Wisconsin Interscholastic Athletic Ass'n v. Gannett Co.*, 658 F.3d 614, 627-28 (7th Cir. 2011) (explaining that although there may be an affirmative right to attend a public proceeding, "the Supreme Court has not yet recognized any corollary right guaranteed by the First Amendment entitling the media to record, let alone broadcast live, what happens at that proceeding."). Here, Plaintiffs are permitted to be present at the CCA interviews with their representative, take notes, and upon request, will be provided a copy of a recording of the interview at its conclusion. Therefore, the no-recording policy does not prevent Plaintiffs from using other means of accessing the information they seek. *Accord Carlow v. Mruk*, 425 F. Supp. 2d 225, 248 (D.R.I. 2006) (finding no deprivation of First Amendment rights because inability to videotape the meeting did not in any way impact

15

plaintiffs' right to be present at the annual meeting of fire district); *Maple Heights News v. Lansky*, No. 1:15CV53, 2017 WL 951426, at *3 (N.D. Ohio Mar. 10, 2017) (concluding that plaintiffs' First Amendment rights were not violated when the defendant turned off and removed the plaintiffs' video camera from a city council meeting because the entire meeting was audio-recorded and made available to plaintiffs); *United States v. McDougal*, 103 F.3d 651, 658 (8th Cir. 1996) (concluding "the public's interest in gaining access to the videotape recording [of the former president's] testimony is only marginal because the testimony has already been made visually and aurally accessible in the courtroom and the transcript has been widely distributed and publicized"). Accordingly, the Court finds that Plaintiffs have failed to state a claim that the no-recording policy violates their First Amendment rights.

Plaintiffs' retaliation claim fails for the same reason. A First Amendment retaliation claim requires proof that "(1) the plaintiff engaged in constitutionally protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct." *Paterek v. Vill. of Armada, Mich.*, 801 F.3d 630, 645 (6th Cir. 2015). Because the Court has concluded that recording CCA interviews is not constitutionally protected conduct, Plaintiffs have failed to state a claim for First Amendment retaliation. Accordingly, Defendants' Motion to Dismiss and Supplemental Motion to Dismiss are GRANTED.

### III. <u>CONCLUSION</u>

Based on the foregoing, it is hereby **ORDERED** that:

1. Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 2) is **DENIED**;

2. Defendants' Motion to Dismiss (Doc. 14) is **GRANTED**;

3. Plaintiffs' Motion for Leave to File a Supplement to their Memorandum in Opposition to the Motion to Dismiss (Doc. 17) is **DENIED as MOOT**;

4. Defendants' Supplemental Motion to Dismiss (Doc. 19) is **GRANTED**; and

5. This matter shall be **CLOSED** and **TERMINATED** from the active docket of this Court.

**IT IS SO ORDERED.**

                                                  */s/ Michael R. Barrett*
                                                  Michael R. Barrett
                                                  United States District Judge